1  Vanessa R. Waldref
2  United States Attorney
   Eastern District of Washington
3  Tyler H.L. Tornabene
   Dan Fruchter
4  Assistant United States Attorneys
5  Post Office Box 1494
   Spokane, WA 99210-1494
6  Telephone: (509) 353-2767

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

SEP 2 1 2022

SEAN F. McAVOY, CLERK
_____DEPUTY
SPOKANE, WASHINGTON

7

8          UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF WASHINGTON
9

10  UNITED STATES OF AMERICA,

11              Plaintiff,                    Case No.: 2:22-CR-89-TOR

12      v.                                    Plea Agreement

13
14  DONDRE CHARLES JACKSON,

15              Defendant.

16

17      Plaintiff United States of America, by and through Vanessa R. Waldref,

18  United States Attorney the Eastern District of Washington, and Tyler H.L.

19  Tornabene and Dan Fruchter, Assistant United States Attorneys for the Eastern

20  District of Washington, and Defendant Dondre Charles Jackson ("Defendant"),

21  both individually and by and through Defendant's counsel, Lorinda Youngcourt,

22  agree to the following Plea Agreement.

23      1.    Guilty Plea and Maximum Statutory Penalties

24      Defendant agrees to enter a plea of guilty to Count 6 of the Indictment filed

25  on July 19, 2022, which charges Defendant with False, Fictitious, or Fraudulent

26  Claims, in violation of 18 U.S.C. § 287, a Class D felony.

27      Defendant understands that the following potential penalties apply:

28          a.    a term of imprisonment of not more than 5 years;

PLEA AGREEMENT – 1

b.      a term of supervised release of up to 3 years;

c.      a fine of up to $250,000;

d.      restitution; and

e.      a $100 special penalty assessment.

2.     <u>Supervised Release</u>

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision up to 2 years in prison.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

3.     <u>The Court is Not a Party to this Plea Agreement</u>

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

a.      sentencing is a matter solely within the discretion of the Court;

b.      the Court is under no obligation to accept any recommendations made by the United States or Defendant;

c.      the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

d.      the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

PLEA AGREEMENT – 2

e.    the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

f.    the Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea.

4.    Potential Immigration Consequences of Guilty Plea

If Defendant is not a citizen of the United States, Defendant understands the following:

a.    pleading guilty in this case may have immigration consequences;

b.    a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

c.    removal from the United States and other immigration consequences are the subject of separate proceedings; and

d.    no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

5.    Waiver of Constitutional Rights

Defendant understands that by entering this guilty plea, Defendant is knowingly and voluntarily waiving certain constitutional rights, including the following:

a.    the right to a jury trial;

PLEA AGREEMENT – 3

b.      the right to see, hear and question the witnesses;

c.      the right to remain silent at trial;

d.      the right to testify at trial; and

e.      the right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands that Defendant retains the right to be assisted by an attorney through the sentencing proceedings in this case and any direct appeal of Defendant's conviction and sentence, and that an attorney will be appointed at no cost if Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

6.      Elements of the Offense

The United States and Defendant agree that in order to convict Defendant of False, Fictitious, or Fraudulent Claims, in violation of 18 U.S.C. § 287, the United States would have to prove the following beyond a reasonable doubt.

a.      *First*, in the Eastern District of Washington and elsewhere, Defendant knowingly presented a false claim to the U.S. Small Business Administration (SBA), an agency of the United States;

b.      *Second*, Defendant knew that the claim was false or fraudulent at the time it was made; and

c.      *Third*, the false or fraudulent claim was material to the SBA; that it, it had the tendency to influence, or was capable of influencing, the SBA to part with money or property.

7.      Factual Basis and Statement of Facts

The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond

PLEA AGREEMENT – 4

1   a reasonable doubt at trial; and these facts constitute an adequate factual basis for

2   Defendant's guilty plea.

3       The United States and Defendant agree that this statement of facts does not

4   preclude either party from presenting and arguing, for sentencing purposes,

5   additional facts that are relevant to the Sentencing Guidelines computation or

6   sentencing, unless otherwise prohibited in this Plea Agreement.

7       The Coronavirus Aid, Relief, and Economic Security Act ("CARES" Act)

8   was a federal law enacted on March 27, 2020, designed to provide emergency

9   financial assistance to the millions of Americans who were suffering the economic

10  effects caused by the COVID-19 pandemic.  One source of relief provided by the

11  CARES Act was the authorization of forgivable loans to small businesses for job

12  retention and other certain expenses, through a program referred to as the Paycheck

13  Protection Program ("PPP").

14      In order to obtain a PPP loan, a qualifying business was required to submit a

15  PPP loan application signed by an authorized representative of the business. The

16  PPP loan application required the business (through its authorized representative)

17  to acknowledge the program rules and make certain affirmative certifications in

18  order to be eligible to obtain the PPP loan.  In the PPP loan application, the

19  applicant (through its authorized representative) was required to state, among other

20  things: (a) its average monthly payroll expenses; and (b) its number of employees.

21  If the applicant had no employees other than the owner, the applicant was required

22  to provide the gross income amount from a 2019 or 2020 IRS Form 1040,

23  Schedule C.  These figures were used to calculate the amount of money the small

24  business was eligible to receive under the PPP.  Additionally, the applicant was

25  required to certify that they were in operation as of February 15, 2020.  The

26  applicant was also required to certify that the information in the application was

27  true and correct to the best of the applicant's knowledge.

28

PLEA AGREEMENT – 5

1   A business's PPP loan application was received and processed, in the first

2   instance, by a participating lender. If a PPP loan application was approved, the

3   participating lender funded the PPP loan using its own monies. Data from the

4   application, including information about the borrower, the total amount of the loan,

5   the listed number of employees, and the gross income amount, was transmitted by

6   the lender to the Small Business Administration ("SBA"), an agency of the United

7   States, in the course of processing the loan.

8   On or about April 15, 2021, Defendant submitted an application for PPP

9   Loan No. 4715988810 to the SBA under the name of his purported catering

10  business in his own name, that is, "Dondre Jackson." In the application, Defendant

11  listed the "business address" of the purported business as his own personal address.

12  Defendant falsely stated in the application that the business was established on

13  January 1, 2019, that it had one employee, and that it had a gross income of

14  $103,208.00 in calendar year 2019. Defendant further submitted a false,

15  fraudulent, and fictitious IRS Form 1040, Schedule C in support of his application,

16  which falsely set forth purported gross business income of $103,208 for 2019.

17  Defendant certified that the information in the application was true and accurate,

18  subject to criminal penalties for knowingly making false statements.

19  The representations and certifications made by Defendant on the application

20  for PPP Loan No. 4715988810 were materially false and Defendant knew they

21  were false at the time they were made. Defendant did not have a registered, active,

22  or legitimate business, and did not have business income of $103,208.00, or any

23  business income, during 2019, as falsely set forth in his PPP application as well as

24  the fraudulent IRS Form 1040, Schedule C, that Defendant submitted in support of

25  his PPP application. Accordingly, neither Defendant nor his fictitious catering

26  business were eligible for any PPP funding.

27  Using the above materially false information on the application for PPP

28  Loan No. 4715988810, Defendant applied for a PPP loan of $20,833.00 through

PLEA AGREEMENT – 6

1   lender Benworth Capital. As a result of the fraud and relying on the materially
2   false and fraudulent representations and certifications made by Defendant, on or
3   about April 16, 2021, the lender approved Defendant's PPP loan for $20,833.00.
4   On April 16, 2021, as a result of the fraudulent scheme described above, and the
5   materially false and fraudulent information supplied by Defendant the SBA
6   approved the requested PPP Loan No. 4715988810.  On or about June 30, 2021,
7   Benworth Capital disbursed $20,833.00 in PPP funding to the Defendant.

8          On or about May 20, 2021, after PPP Loan No. 4715988810 had been
9   approved, but before it had been disbursed, Defendant submitted an additional PPP
10  loan application, for PPP Loan No. 5458679004, to the SBA for his purported
11  catering business in his own name.  In the application, Defendant listed the
12  "business address" of the purported business as his own personal address.
13  Defendant falsely stated in the application that the business was established on
14  January 1, 2019, that it had one employee, and that it had a gross income of
15  $103,208.00 in calendar year 2019.  Defendant further submitted a false,
16  fraudulent, and fictitious IRS Form 1040, Schedule C in support of his application,
17  which falsely set forth purported gross business income of $103,208 for 2019.
18  Defendant certified that the information in the application was true and accurate,
19  subject to criminal penalties for knowingly making false statements.

20         The representations and certifications made by Defendant on the application
21  for PPP Loan No. 5458679004 were materially false and Defendant knew they
22  were false at the time they were made.  Defendant did not have a registered, active,
23  or legitimate business, and did not have business income of $103,208.00, or any
24  business income, during 2019, as falsely set forth in his PPP application as well as
25  the fraudulent IRS Form 1040, Schedule C, that Defendant submitted in support of
26  his PPP application.  Accordingly, neither Defendant nor his fictitious catering
27  business were eligible for any PPP funding.

28

PLEA AGREEMENT – 7

On or about May 22, 2021, as a result of the fraudulent scheme described above, and the materially false and fraudulent information supplied by Defendant, the SBA approved the requested PPP Loan No. 5458679004.  On or about June 3, 2021, Harvest Small Business Finance, LLC, disbursed $29,166.00 to Defendant's Eastern District of Washington bank account with JP Morgan Chase ending in 9518.

8.    The United States' Agreements

The United States Attorney's Office for the Eastern District of Washington agrees that at the time of sentencing, the United States will move to dismiss Counts 1 through 5 of the Indictment filed on July 19, 2022, which charge Defendant as follows: Counts 1 through 4, Wire Fraud in violation of 18 U.S.C. § 1343; and Count 5, False Fictitious, or Fraudulent Claims, in violation of 18 U.S.C. § 287.

The United States Attorney's Office for the Eastern District of Washington agrees not to bring additional charges against Defendant based on the criminal activity set forth in this Plea Agreement that arises out of Defendant's conduct involving illegal activity charged or identified as a result of this investigation, unless Defendant breaches this Plea Agreement before sentencing.  Nothing in this agreement is intended to release any liability arising under Title 26, United States Code (Internal Revenue Code).

9.    United States Sentencing Guidelines Calculations

Defendant understands and acknowledges that the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant agree to the following Guidelines calculations.

a.    Base Offense Level

The United States and the Defendant agree that the base offense level for False, Fictitious, or Fraudulent Claims, in violation of 18 U.S.C. § 287, is 6. U.S.S.G. § 2B1.1(a)(2).

PLEA AGREEMENT – 8

b.    Special Offense Characteristics

The United States and the Defendant agree that Defendant's base offense level is increased by 6 levels because the loss amount (both actual and intended) was more than $40,000, but less than $95,000.  See U.S.S.G. § 2B1.1(b)(1)(D).  The parties are not aware of any other specific offense characteristics that apply.

c.    Acceptance of Responsibility

The United States will recommend that Defendant receive a downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), if Defendant does the following:

i.    accepts this Plea Agreement;

ii.    enters a guilty plea on before September 21, 2022;

iii.    demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

iv.    provides complete and accurate information during the sentencing process; and

v.    does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

d.    No Other Agreements

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances.  Defendant understands and acknowledges that the United States is free to make any sentencing arguments it sees fit, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed

PLEA AGREEMENT – 9

pursuant to this Agreement, and Defendant's relevant conduct.

       e.    Criminal History

The United States and Defendant have no agreement and make no representations about Defendant's criminal history category, which will be determined by the Court after the United States Probation Office prepares and discloses a Presentence Investigative Report.

       10.    Incarceration

The United States agrees to recommend a sentence at or below the low end of the Guidelines, as calculated by the Court. Defendant may recommend any legal sentence.

       11.    Supervised Release

The United States and Defendant each agree to recommend 3 years of supervised release. Defendant agrees that the Court's decision regarding the conditions of Defendant's Supervised Release is final and non-appealable; that is, even if Defendant is unhappy with the conditions of Supervised Release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised Release.

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

       a.    Defendant will provide financial information and copies of federal income tax returns, and allow credit checks, at the direction of the United States Probation Office;

       b.    Defendant shall disclose all assets and liability to the United States Probation Office and shall not transfer, sell, give away, or otherwise convey or secret any asset, without the advance approval of the United States Probation Office;

PLEA AGREEMENT – 10

c.    Defendant is prohibited from incurring any new debt, opening
new lines of credit, or enter any financial contracts or
obligations without the prior approval of the United States
Probation Office; and

d.    Defendant shall participate in and complete financial
counseling and life skills programs at the direction of the
United States Probation Office.

12.    Criminal Fine

The parties agree to recommend no additional criminal fine.

13.    Mandatory Special Penalty Assessment

Defendant agrees to pay the $100 mandatory special penalty assessment to
the Clerk of Court for the Eastern District of Washington, pursuant to 18 U.S.C.
§ 3013.

14.    Restitution

The United States and Defendant agree that restitution is appropriate and
mandatory, without regard to Defendant's economic situation, to identifiable
victims who have suffered physical injury or pecuniary loss, pursuant to 18 U.S.C.
§§ 3663A, 3664.

Pursuant to 18 U.S.C. § 3663(a)(3), Defendant voluntarily agrees to pay
restitution for all losses caused by Defendant's individual conduct, in exchange for
the United States not bringing additional potential charges, regardless of whether
counts associated with such losses will be dismissed as part of this Plea
Agreement. With respect to restitution, the United States and Defendant agree to
the following:

a.    Restitution Amount and Interest

The United States and Defendant stipulate and agree that, pursuant to 18
U.S.C. §§ 3663, 3663A and 3664, the Court should order restitution in an amount
of at least $49,999, which consists of at least $20,833 for PPP Loan #4715988810

PLEA AGREEMENT – 11

and at least $29,166 for PPP Loan #5458679004, and that any interest on this restitution amount, if any, should be waived. The United States reserves the right to request additional restitution for the amounts owed to SBA related to these two PPP Loans, including but not limited to, loan origination fees, recording fees, accrued interest, and other loan costs.

        b.    Payments

To the extent restitution is ordered, the United States and Defendant agree that the Court will set a restitution payment schedule based on Defendant's financial circumstances. 18 U.S.C. § 3664(f)(2), (3)(A). Regardless, Defendant agrees to pay not less than 10% of Defendant's net monthly income towards restitution.

        c.    Treasury Offset Program and Collection

Defendant understands the Treasury Offset Program ("TOP") collects delinquent debts owed to federal agencies. If applicable, the TOP may take part or all of Defendant's federal tax refund, federal retirement benefits, or other federal benefits and apply these monies to Defendant's restitution obligations. 26 U.S.C. § 6402(d); 31 U.S.C. § 3720A; 31 U.S.C. § 3716.

Defendant understands that the United States may, notwithstanding the Court-imposed payment schedule, pursue other avenues to ensure the restitution obligation is satisfied, including, but not limited to, garnishment of available funds, wages, or assets. 18 U.S.C. §§ 3572, 3613, and 3664(m).

Nothing in this acknowledgment shall be construed to limit Defendant's ability to assert any specifically identified exemptions as provided by law, except as set forth in this Plea Agreement.

Until Defendant's fine and restitution obligations are paid in full, Defendant agrees fully to disclose all assets in which Defendant has any interest or over which Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or third party.

PLEA AGREEMENT – 12

1    Until Defendant's fine and restitution obligations are paid in full, Defendant

2  agrees to provide waivers, consents, or releases requested by the U.S. Attorney's

3  Office to access records to verify the financial information.

4              d.    Notifications and Waivers

5    Defendant agrees to notify the Court and the United States of any material

6  change in Defendant's economic circumstances (e.g., inheritances, monetary gifts,

7  changed employment, or income increases) that might affect Defendant's ability to

8  pay restitution.  18 U.S.C. § 3664(k).  Defendant also agrees to notify the United

9  States of any address change within 30 days of that change.  18 U.S.C.

10 § 3612(b)(1)(F).  These obligations cease when Defendant's fine and restitution

11 obligations are paid in full.

12    Defendant acknowledges that the Court's decision regarding restitution is

13 final and non-appealable; that is, even if Defendant is unhappy with the amount of

14 restitution ordered by the Court, that will not be a basis for Defendant to withdraw

15 Defendant's guilty plea, withdraw from this Plea Agreement, or appeal

16 Defendant's conviction, sentence, or restitution order.

17         15.    Payments While Incarcerated

18    If Defendant lacks the financial resources to pay the monetary obligations

19 imposed by the Court, Defendant agrees to earn money toward these obligations by

20 participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

21         16.    Additional Violations of Law Can Void Plea Agreement

22    The United States and Defendant agree that the United States may, at its

23 option and upon written notice to the Defendant, withdraw from this Plea

24 Agreement or modify its sentencing recommendation if, prior to the imposition of

25 sentence, Defendant is charged with or convicted of any criminal offense or tests

26 positive for any controlled substance.

27         17.    Waiver of Appeal Rights

28

PLEA AGREEMENT – 13

1    Defendant understands that Defendant has a limited right to appeal or

2    challenge Defendant's conviction and the sentence imposed by the Court.

3    Defendant expressly waives all of Defendant's rights to appeal Defendant's

4    conviction and the sentence the Court imposes.

5    Defendant expressly waives Defendant's right to appeal any fine, term of

6    supervised release, or restitution order imposed by the Court.

7    Defendant expressly waives the right to file any post-conviction motion

8    attacking Defendant's conviction and sentence, including a motion pursuant to 28

9    U.S.C. § 2255, except one based on ineffective assistance of counsel arising from

10    information not now known by Defendant and which, in the exercise of due

11    diligence, Defendant could not know by the time the Court imposes sentence.

12    Nothing in this Plea Agreement shall preclude the United States from

13    opposing any post-conviction motion for a reduction of sentence or other attack

14    upon the conviction or sentence, including, but not limited to, writ of habeas

15    corpus proceedings brought pursuant to 28 U.S.C. § 2255.

16        18.    Compassionate Release

17    In consideration for the benefits Defendant is receiving under the terms of

18    this Plea Agreement, Defendant expressly waives Defendant's right to bring any

19    motion for Compassionate Release other than a motion arising from one of the

20    specific bases set forth in this paragraph of this Plea Agreement.  The United States

21    retains the right to oppose, on any basis, any motion Defendant files for

22    Compassionate Release.

23    The only bases on which Defendant may file a motion for Compassionate

24    Release in the Eastern District of Washington are the following:

25        a.    Medical Condition of Defendant

26            i.    Defendant is suffering from a terminal illness (i.e., a

27                serious and advanced illness with an end of life

28                trajectory).  A specific prognosis of life expectancy (i.e.,

PLEA AGREEMENT – 14

a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia; or

    ii.    Defendant is suffering from a serious physical or medical condition, a serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which Defendant is not expected to recover.

    b.    <u>Age of Defendant</u>

        i.    Defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process; and has served at least 10 years or 75 percent of Defendant's term of imprisonment, whichever is less; or

        ii.    Defendant is at least 70 years old and has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which Defendant is imprisoned.

    c.    <u>Family Circumstances</u>

        i.    The caregiver of Defendant's minor child or children has died or become incapacitated, and Defendant is the only available caregiver for Defendant's minor child or children; or

  ii.  Defendant's spouse or registered partner has become
incapacitated, and Defendant is the only available
caregiver for Defendant's spouse or registered partner.

 d. <u>Subsequent Reduction to Mandatory Sentence</u>

  i.  Defendant pleaded guilty to an offense which, on the date
of Defendant's guilty plea, carried a mandatory minimum
sentence; and

  ii.  after the entry of judgment, the length of the mandatory
minimum sentence for Defendant's offense of conviction
was reduced by a change in the law; and

  iii.  the application of the reduced mandatory minimum
sentence would result in Defendant receiving a lower
overall sentence.

 e. <u>Ineffective Assistance of Counsel</u>

  i.  Defendant seeks Compassionate Release based on a
claim of ineffective assistance of counsel arising from
information that Defendant both

   1.  did not know at the time of Defendant's guilty
plea, and

   2.  could not have known, in the exercise of due
diligence, at the time the Court imposed sentence.

19. <u>Withdrawal or Vacatur of Defendant's Plea</u>

Should Defendant successfully move to withdraw from this Plea Agreement
or should Defendant's conviction be set aside, vacated, reversed, or dismissed
under any circumstance, then:

 a. this Plea Agreement shall become null and void;

 b. the United States may prosecute Defendant on all available
charges;

PLEA AGREEMENT – 16

c.   The United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

d.   the United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and/or defenses Defendant might have to the United States' decisions to seek, reinstate, or reinitiate charges if a count of conviction is withdrawn, set aside, vacated, reversed, or dismissed, including any claim that the United States has violated Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to, alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

20.   <u>Integration Clause</u>

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

The United States and Defendant agree that this Agreement cannot be modified except in a writing that is signed by the United States and Defendant.

PLEA AGREEMENT – 17

Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Vanessa R. Waldref
United States Attorney

_____        9-21-22
Tyler H.L. Tornabene            Date
Assistant United States Attorney

_____        9-21-22
Dan Fruchter                    Date
Assistant United States Attorney

I have read this Plea Agreement and I have carefully reviewed and discussed every part of this Plea Agreement with my attorney. I understand the terms of this Plea Agreement. I enter into this Plea Agreement knowingly, intelligently, and voluntarily. I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement. No one has threatened or forced me in any way to enter into this Plea Agreement. I agree to plead guilty because I am guilty.

_____        9/21/2022
Dondre Charles Jackson, Defendant    Date

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept Defendant's guilty plea.

_____        9/21/2022
Lorinda Youngcourt              Date
Attorney for Defendant

PLEA AGREEMENT – 18